WILSON v. VANCE.

No. 32999.   Oct. 14, 1947.

Rehearing Denied Nov. 25, 1947.

*186 P. 2d 805.*

Richard A. Hays, of Okmulgee, for plaintiff in error.

Steele & Boatman, of Okmulgee, for defendant in error.

LUTTRELL, J.   This action was brought by plaintiff, B. J. Wilson, against Mayola B. Vance and others, to quiet plaintiff's title to an undivided one-half interest to certain property in the city of Okmulgee, and to cancel a deed which purported to be signed by plaintiff. In a second cause of action plaintiff asked for partition of the property. The defendant, Mayola B. Vance, in her answer, denied that the deed was

a forgery and by cross-petition asked that the title be quieted in her. The trial court impaneled a jury, which returned a verdict in favor of the defendant, and judgment was rendered on the verdict. Plaintiff appeals.

Undisputed facts are that plaintiff and H. J. Vance, the husband of Mayola B. Vance, each acquired in 1937 an undivided one-half interest in the west half of lot 5, block 62, in the city of Okmulgee. Four small buildings were upon the property, and in one of them plaintiff conducted his business, in another Vance conducted a business, and the other two were rented. Vance died in April, 1946, and after his death a quitclaim deed purporting to be signed by plaintiff, and conveying to Vance plaintiff's one-half interest in the property, was discovered among Vance's papers. The other heirs of Vance agreed in writing with defendant, Mayola B. Vance, that if said deed conveyed title to plaintiff's one-half interest in the property they would convey to her all their right, title and interest therein, and although made parties to the action, they disclaimed any right, title or interest in the property. Mayola B. Vance asserted title to the property under and by virtue of the quitclaim deed, whereupon plaintiff brought this action. The action is predicated solely upon the proposition that the deed from plaintiff to Vance was and is a forged instrument.

The evidence developed a most unusual and peculiar situation. Plaintiff's evidence showed that up to the time of Vance's death plaintiff remained in the undisputed possession of the building occupied by him on the premises; that subsequent to the date of the deed in controversy Vance had repeatedly recognized plaintiff's one-half interest in the property by dividing rentals with plaintiff, listing the property for taxation as being jointly owned by both plaintiff and himself, and that at least once, in 1945, plaintiff had paid one-half of the taxes on the property. Plaintiff testified that he did not execute the deed or acknowledge it; that he had never paid any rent for the building occupied by him; that Vance, who looked after the property, had always divided the rentals with him and that plaintiff had always paid his proportionate part of the taxes. He introduced witnesses who testified that Vance had in their presence, after the date of the aforesaid deed, repeatedly referred to the property as belonging to him and plaintiff. Plaintiff showed that shortly before his death Vance deeded to the defendant, Mayola B. Vance, certain property owned by him, and that among these deeds was a deed to Vance's one-half interest in this particular property. He also introduced in evidence assessment lists signed by Vance listing the property for taxes in the name of plaintiff and Vance jointly, and tax receipts evidencing the payment of taxes on the property made out in the names of Vance and plaintiff.

Defendant, to sustain her contention that the signature of the deed was not a forgery, produced the notary public before whom it was acknowledged. He testified that plaintiff personally brought the deed into his place of business and asked him to take his acknowledgment, and that he did so. The notary also testified that he made a record of the acknowledgment, since it affected real estate, but that his record had been lost or mislaid. The testimony of the notary was not impeached in any way, except that one of the defendants, whose affidavit to a disclaimer was taken by him, testified that she did not appear personally at that time, although he had testified that she did. Plaintiff admitted that he and the notary were good friends, and offered no evidence to show any reason why the notary would testify falsely against him.

Defendant also produced the vice president and cashier of the local bank at which plaintiff transacted his business. This witness testified that for more than seven years he had passed

upon disputed or doubtful signatures at his bank; that he had examined the signature card of plaintiff on file in the bank, which card he produced in evidence, and that from comparison of the signature on the deed with the signature on the card, and the examination of other signatures of plaintiff which were placed before him, he was satisfied that the signature on the deed was unquestionably that of plaintiff. Another banker, produced as a witness for plaintiff on rebuttal, testified that from comparison of the admitted signatures of plaintiff with that on the deed he could not say whether or not the signature on the deed was that of plaintiff. On cross-examination he admitted that if there had been presented to him a check signed as the deed was signed, and he had before him the signature card of plaintiff, he would probably have cashed the check. The notary public who testified he took the acknowledgment also testified that he had acknowledged various instruments signed by plaintiff in the past, and that in his judgment the signature on the deed was that of plaintiff.

The signature card of plaintiff, the deed, and other signatures of plaintiff, including one made by him at the trial of the case, were all submitted to the jury to assist it in arriving at the verdict. After the jury had deliberated awhile it returned into court and stated that it found that the deed was not a forgery, but desired to return a verdict showing that the plaintiff was the owner of a one-half interest in the property. On being advised by the trial court that it could not return such a verdict if it found that the deed was not a forgery, it returned to the jury room and brought in a verdict for the defendant. The trial court submitted to the jury a special interrogatory as follows:

"Is the signature on the quitclaim deed from B. J. Wilson to H. J. Vance a forgery?", and its answer to this interrogatory was "No."

In this court plaintiff contends that the judgment of the trial court is contrary to the evidence, for the reason that the uncontradicted evidence establishes conclusively that the deed is a forgery. He calls attention to the testimony produced by him, as outlined above, and argues that this unquestionably shows that he was at all times the owner of a one-half interest in the property, and that such evidence was sufficient to impeach and overthrow the certificate of acknowledgment of the notary. He urges that the trial court erred in rendering the judgment for defendant upon the verdict of the jury, and in refusing to grant him a new trial, because of the insufficiency of the evidence to justify a verdict for defendant.

We have in a multitude of cases announced the rule that in a case of equitable cognizance such as this, the judgment of the trial court will be sustained unless, upon examination of the record it appears that such judgment is clearly against the weight of the evidence. A careful and painstaking study of the evidence contained in the record, including photostatic copies of the deed, the signature card of plaintiff, his signature on a check, and one made at the trial of the case, all of which appear in the record, convinces us that the verdict of the jury, and the judgment of the trial court thereon, were not clearly against the weight of the evidence, and that the evidence offered by defendant was sufficient to establish that the signature of plaintiff on the deed was not a forgery.

It is difficult to reconcile the fact that plaintiff conveyed his interest in the property to Vance with the evidence that thereafter Vance continued to treat the property as owned by both, unless we assume that plaintiff made the deed and delivered to Vance pursuant to some understanding between them which is not disclosed by the record. Plaintiff, however, did not bring his

action upon such theory, but predicated it solely on the proposition that the deed was a forgery. The judgment of the trial court was not clearly against the weight of the evidence.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.

Rehearing Denied Nov. 25, 1947.